UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jose Augusto Alves da Silva

      v.                              Civil No. 25-cv-284-LM-TSM
                                       Opinion No. 2025 DNH 117 P

US Immigration and Customs Enforcement,
Boston Field Office Acting Director et al.

**O R D E R**

Petitioner Jose Augusto Alves da Silva petitions for a writ of habeas corpus under 28 U.S.C. § 2241. He contends that his present immigration detention pursuant to 8 C.F.R. § 1003.19(i)(2) violates his right to procedural due process under the Fifth Amendment to the United States Constitution.

The government moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Doc. no. 17. On September 18, 2025, this court held a hearing that was intended to address the government's motion, as well as whether Alves da Silva was entitled to a bail hearing in this court pursuant to the court's inherent authority to release habeas petitioners. See Gomes v. US Dep't of Homeland Sec., Acting Sec'y, 460 F. Supp. 3d 132, 144 (D.N.H. 2020). However, the day before the hearing, Alves da Silva submitted a filing asking this court to rule on the habeas petition itself. At the hearing the next day, the government agreed that no Gomes hearing was necessary and that the court should rule on the motion to dismiss the petition. Following oral argument on the motion, the court issued an oral ruling denying the motion to dismiss and granting Alves da Silva's petition for a writ of habeas corpus.

The court explained orally from the bench the reasons for its decision, and that a written order detailing its reasoning was forthcoming.[1] This is that order.

## STANDARD OF REVIEW

This court may grant a writ of habeas corpus to a person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. The petition "may be resolved on the merits without [an evidentiary] hearing when, as here, the material facts are not in dispute." Cummings v. Fed. Corr. Inst., Berlin, Civ. No. 22-cv-468-SM-AJ, 2024 WL 1256068, at *1 (D.N.H. Mar. 25, 2024). The petitioner has the burden of proving that his confinement is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009).

## BACKGROUND[2]

Alves da Silva is a thirty-six-year-old man from Brazil, who entered the United States without lawful entry in or around 2012. On May 5, 2025, police in Lowell, Massachusetts arrested Alves da Silva for operating a vehicle without a license. Once Alves da Silva was released from police custody, officers from Customs and Border Protection ("CBP") immediately arrested him on an administrative warrant directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act [INA]," which are codified at 8 U.S.C. §§ 1226, 1357. Doc. no. 16-5 at 2. The government then issued Alves da Silva

---

[1] Alves da Silva was released from custody on September 22, 2025.

[2] The following facts are drawn from Alves da Silva's amended petition (doc. no. 16), the government's motion to dismiss (doc. no. 17), and the exhibits attached thereto. They are not in dispute.

2

a Notice to Appear, placing him in removal proceedings under 8 U.S.C. § 1229a.
Doc. no. 16-7 at 2. The government also issued Alves da Silva a Notice of Custody
Determination informing him that it was exercising its discretion under § 1226 to
detain him pending a final determination in his case. Doc. no. 16-6 at 2. That Notice
states that Alves da Silva "may request a review of this custody determination by
an [IJ]." Id.

Alves da Silva subsequently filed a motion for a bond redetermination
hearing before an IJ and an application for asylum. Before the bond
redetermination hearing, the government filed a motion arguing that Alves da Silva
was ineligible for bond because he was being held as an "applicant for admission"
under 8 U.S.C. § 1225. Rejecting this argument, on July 14, the IJ ordered Alves da
Silva released on a $6,500 bond. The government thereafter filed a notice of intent
to appeal the IJ's custody determination with the immigration court, which
triggered an automatic 10-day stay of the redetermination order pursuant to 8
C.F.R. §§ 1003.19(i)(2) and 1003.6(c)(1). Subsequently, the government filed a notice
of appeal with the Board of Immigration Appeals ("BIA"), which extended the
automatic stay by at least an additional ninety days. Id. § 1003.6(c)(4). Thus,
despite the IJ's order entitling Alves da Silva to release on bond, he continued to be
detained.

## DISCUSSION

Alves da Silva claims that his continued detention pursuant 8 C.F.R. §
1003.19(i)(2) violates his right to procedural due process under the Fifth

Amendment to the United States Constitution. In response, the government argues that Alves da Silva is an "applicant for admission" detained pursuant to 8 U.S.C. § 1225(b)(2), which requires his detention throughout his entire removal proceedings, and that the automatic stay regulation does not offend due process. The court will first provide an overview of the relevant statutory and regulatory scheme before addressing the merits of Alves da Silva's claim.

I.    <u>Statutory and Regulatory Scheme</u>

This court recently provided an overview of the statutory scheme governing detention of noncitizens pending removal proceedings in Jimenez v. FCI Berlin, Warden, --- F. Supp. 3d ----, 2025 WL 2639390, at *3-4 (D.N.H. Sept. 8, 2025). In short, 8 U.S.C. § 1226 sets forth the government's authority to arrest and detain noncitizens present in the country pending the outcome of removal proceedings, while 8 U.S.C. § 1225(b) applies primarily to noncitizens trying to enter the United States or apprehended at or near the border. <u>Id.</u> Noncitizens arrested and detained under § 1226(a) are generally entitled to a bond hearing before an IJ, while noncitizens detained under § 1225(b) are not. <u>Id.</u>

Federal regulations provide that both the noncitizen and the government have a right to appeal an IJ's decision regarding a custody status or bond redetermination to the BIA. 8 C.F.R. §§ 1003.19(f), 1003.38. Pertinent here, if an IJ issues an order "authorizing release (on bond or otherwise)," § 1003.19(i)(2) ("automatic stay regulation") permits the Department of Homeland Security ("DHS") to automatically stay the IJ's order, resulting in the continued detention of

the noncitizen pending DHS's appeal to the BIA. To trigger the stay, DHS need only file a one-page form with the immigration court within one day of its release order. Id. § 1003.19(i)(2); see doc. no. 16-4 at 2. Section 1003.6(c)(1) further provides that the stay remains in effect for ten business days to permit DHS to file a notice of appeal with the BIA. Once DHS files the notice of appeal, the stay is automatically extended for ninety days. Id. § 1003.6(c)(4). This ninety-day period may be automatically extended by an additional thirty days if DHS seeks a "discretionary stay" from the BIA pursuant to § 1003.19(i)(1) prior to the expiration of the original ninety-day period. Id. § 1003.6(c)(5).

Moreover, under § 1003.6(d), if the BIA "authorizes an alien's release (on bond or otherwise), denies a motion for discretionary stay, or fails to act on such a motion before the automatic stay period expires, the alien's release shall be automatically stayed for five [additional] business days," or for fifteen business days if DHS refers the case to the Attorney General within those five business days. From there, the Attorney General may order a stay "pending the disposition of any custody case." Id.

II.    Alves da Silva Is Not Detained Pursuant to 8 U.S.C. § 1225(b)(2)

As in an initial matter, this court rejects the government's argument that Alves da Silva is "an applicant for admission" who is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) rather than the discretionary detention framework of 8 U.S.C. § 1226(a). As this court explained in Jimenez, § 1225(b)(2)'s plain language, statutory scheme, history, and context all preclude the expansive reading that the

5

government offers here. 2025 WL 2639390, at *5-10; accord, e.g., Sampiao v. Hyde, -
-- F. Supp. 3d ----, 2025 WL 2607924, at *11 (D. Mass. Sept. 9, 2025) (collecting
cases).

Applying this court's reasoning in Jimenez, it is clear that Alves da Silva is
subject to § 1226(a)'s discretionary detention framework.[3] Alves da Silva has lived
in the country for approximately thirteen years. When the government arrested
Alves da Silva in Massachusetts in May of this year, it did so based on an
administrative warrant issued pursuant to § 1226. After the arrest, the government
informed Alves da Silva through a Notice of Custody Determination that it was
exercising its discretion under § 1226 to detain him, pending a final determination
in his case. That Notice expressly states that Alves da Silva could appeal the
government's decision to detain him to an IJ. Once Alves da Silva did so, the IJ
rejected the government's same argument regarding § 1225(b)(2) that it makes
before this court. Given the facts of this case, this court agrees with the IJ's
determination that Alves da Silva's detention is governed by § 1226's discretionary
framework. Rather than § 1225(b)(2), 8 C.F.R. § 1003.19(i)(2) is now the current
authority under which Alves da Silva is detained.

---

[3] At the September 18 hearing, when the court indicated that the reasoning
in Jimenez would apply in this case, the government declined to offer further
argument on the issue.

III.    The Automatic Stay Regulation Violates Procedural Due Process

Turning to the merits of Alves da Silva's claim that the automatic stay regulation violates his right to procedural due process, this court applies the three-part balancing test articulated in Mathews v. Eldridge, 424 U.S. 319, 335 (1976). See Hernandez-Lara v. Lyons, 10 F.4th 19, 27 (1st Cir. 2021) (applying Mathews balancing test to determine whether due process requires the government to prove by clear and convincing evidence at a § 1226(a) bond hearing before an IJ that the noncitizen is dangerous or a flight risk).[4] "The Mathews factors are: (1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" Hernandez-Lara, 10 F.4th at 28 (quoting Mathews, 424 U.S. at 335).

Applying these factors, this court finds that the automatic stay regulation violates Alves da Silva's right to procedural due process under the Fifth Amendment. In so ruling, this court finds persuasive the reasoning of Judge

---

[4] Given the First Circuit precedent on point, this court rejects the government's suggestion that this court should not apply the Mathews test. See Hernandez-Lara, 10 F.4th at 27. For the same reason (among others), this court is unpersuaded by the single decision the government cites rejecting a procedural due process challenge to the automatic stay regulation, which did not conduct Mathews balancing. See Altayar v. Lynch, No. cv-16-02479-PHX-GMS (JZB), 2016 WL 7383340, at *4-6 (D. Ariz. Nov. 23, 2016), report and recommendation adopted, 2016 WL 7373353, at *1 (D. Ariz. Dec. 20, 2016).

Kobick's decision in Sampiao v. Hyde, a recent case on the same issue. See 2025 WL 2607924.

The court begins with the first Mathews factor: the private interest at stake. As the government rightly acknowledges, Alves da Silva's liberty interest is great. See id. at 10 ("A person's interest in freedom from physical detention is 'the most elemental of liberty interests.'" (quoting Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004))). At the time of his release following this court granting the petition, Alves da Silva had been imprisoned for over four months. Half of the length of his imprisonment was attributable to the automatic stay regulation. Moreover, for much of his incarceration, Alves da Silva was imprisoned in the Strafford County Jail alongside criminal detainees. Cf. Hernandez-Lara, 10 F.4th at 28 (noncitizen's "incarcerat[ion] alongside criminal inmates at the Strafford County Jail" increased severity of "substantial deprivation of liberty"). Because the government filed its notice of appeal with the BIA on July 28, the automatic stay regulation could have allowed for Alves da Silva's incarceration until October 27 of this year, pending a decision from the BIA. See 8 C.F.R. §§ 1003.19(i)(2), 1003.6(c)(4). And as explained supra, the government could have further extended Alves da Silva's detention for an additional thirty days by simply filing a motion for a discretionary stay, unilaterally prolonging the automatic stay until November 26. Id. § 1003.6(c)(5). See Sampiao, 2025 WL 2607924, at *10 (discussing the many procedural tools that may be used to prolong noncitizen's detention under § 1003.6). In short, the first Mathews factor weighs heavily in Alves da Silva's favor.

Turning to the second <u>Mathews</u> factor, the challenged procedures invite a grave risk of erroneous deprivation. First and foremost, the automatic stay regulation <u>only</u> applies to persons who are entitled to be released on bond pursuant to the determination of an IJ who has considered both the noncitizen's flight risk and any potential danger to the community. <u>Sampiao</u>, 2025 WL 2607924, at *10. In this case, by ordering Alves da Silva released on a $6,500 bond, the IJ found that that government failed to meet its burden to prove that Alves da Silva was a danger to the community or that his risk of flight required his continued detention without bond.[5] Nevertheless, invocation of the automatic stay regulation allows the government to essentially nullify this judicial determination for a period of up to ninety days (to say nothing of the other potential extensions described above).

The automatic stay regulation also allows the government to make an end run around the burden of proof that it bore at the bond hearing. <u>See</u> <u>Hernandez-Lara, 10 F.4th at 41</u>; <u>Sampiao, 2025 WL 2607924</u>, at *10 ("[the] automatic stay regulation 'creates a potential for error because it conflates the functions of adjudicator and prosecutor'" (quoting <u>Zavala v. Ridge, 310 F. Supp. 2d 1071, 1078 (N.D. Cal. 2004)</u>)). The very reason the government may invoke an automatic stay under the regulation is because it failed to carry its burden of demonstrating that the petitioner's release would pose a risk of danger or flight.

---

[5] Despite having lived in this country for approximately thirteen years, Alves da Silva's only criminal record relates to the operating a vehicle without a license charge on May 5, 2025, that ultimately led to his arrest by CBP that same day. Doc. no. 16-2 at 6.

Relatedly, the regulation "inverts the traditional burdens and standards governing requests for stays pending appeal," inviting further risk of error. Sampiao, 2025 WL 2607924, at *11. Ordinarily, to obtain a stay of a trial court's order pending appeal, the appealing party must demonstrate that they are likely to succeed on the merits and that they would be irreparably harmed absent a stay. Id. But the automatic stay regulation requires no showing of likelihood of success on the merits or irreparable injury, which flouts the entrenched principle that a stay pending appeal is an extraordinary "intrusion into the ordinary processes of administration and judicial review" that should not be "granted as 'a matter of right.'" Rhode Island v. Trump, --- F.4th ----, 2025 WL 2621593, at *3 (1st Cir. Sept. 11, 2025) (quoting New York v. Trump, 133 F.4th 51, 65 (1st Cir. 2025)).

Additional or substitute procedural safeguards would reduce the risk of erroneous deprivation. For one, a more traditional burden could be imposed on the government to show it has met some set standards entitling it to a stay pending appeal, such as those used in federal courts referenced above. Sampiao, 2025 WL 2607924, at *11. Alternatively, the government could simply apply to the BIA for a discretionary stay, as provided for in another subsection of the same regulation. Id. (citing 8 C.F.R. § 1003.19(i)(1)).[6] This would mitigate the risk of erroneous deprivation because such a stay would require the BIA to make some individualized determination as to whether the government is likely to succeed in arguing on appeal that the noncitizen's release poses a risk of danger or flight. Id. In short, the

---

[6] Under 8 C.F.R. § 1003.19(i)(1), "DHS is entitled to seek a discretionary stay (whether or not on an emergency basis) from the [BIA] … at any time."

second Mathews factor, risk of erroneous deprivation, also weighs heavily in favor of
Alves da Silva.

Finally, the court turns to the third "Mathews factor -- 'the Government's
interest, including the function involved and the fiscal and administrative burdens
that the additional or substitute procedural requirement would entail' -- which
ultimately entails an assessment of the 'public interest.'" Hernandez-Lara, 10 F.4th
at 32 (quoting Mathews, 424 U.S. at 335, 347). Although the government has a
legitimate interest in ensuring noncitizens' appearance at removal proceedings and
protecting the safety of the community, id., that interest is not particularly weighty
in the circumstances of this case. See Leal-Hernandez v. Noem, Civ. No. 25-cv-
02428-JRR, 2025 WL 2430025, at *14 (D. Md. Aug. 24, 2025) ("the court has no
earthly idea what governmental interest could be served by Petitioner's continued
detention should he satisfy the bond order").

As explained supra, the automatic stay goes into effect only in cases where an
IJ has found that a noncitizen poses neither a flight risk nor a danger to the
community requiring their continued detention. The government makes no attempt
to demonstrate why it has an interest in automatically prolonging the detention of
noncitizens whom an IJ has specifically determined pose neither risk. Cf.
Hernandez-Lara, 10 F.4th at 32 ("any detention incidental to removal must 'bear[ ]
[a] reasonable relation to [its] purpose'" (quoting Zadvydas v. Davis, 533 U.S. 678,
690 (2001))).

Similarly, the government makes no argument as to why it could not apply
for a discretionary stay under § 1003.19(i)(1) or that it would face fiscal or

administrative burdens in so doing. Even assuming there would be some increased burden, it pales in comparison to the harm suffered by someone who is arbitrarily detained. See Leal-Hernandez, 2025 WL 2430025, at *14. See also Sampiao, 2025 WL 2607924, at *12 (suggesting that the automatic stay regulation increases the cost borne by the government to continue to fund and oversee detention). Finally, the court is mindful of the great societal costs of prolonged detention "[i]n our society [where] liberty is the norm." Hernandez-Lara, 10 F.4th at 28 (quoting United States v. Salerno, 481 U.S. 739, 755 (1987)). Thus, the third Mathews factor also weighs in favor of Alves da Silva.[7]

In sum, assessment of all three Mathews factors leads to the conclusion that the automatic stay provision in § 1003.19(i)(2) violates Alves da Silva's right to procedural due process under the Fifth Amendment. The government's attempt to argue otherwise is unpersuasive — as it has been in the ever-growing number of courts from across the country that have all reached the same conclusion. See, e.g., Singh v. Lewis, Civ. No. 4:25-cv-96-RGJ, 2025 WL 2699219, at *5 (W.D. Ky. Sept. 22, 2025); Lopez-Arevelo v. Ripa, Civ. No. 25-cv-337-KC, 2025 WL 2691828, at *12 (W.D. Tex. Sept. 22, 2025); Hasan v. Crawford, Civ. No. 1:25-cv-1408-LMB, 2025 WL 2682255, at *13 (E.D. Va. Sept. 19, 2025); Arce v. Trump, Civ. No. 25-cv-520,

---

[7] To the extent the government argues that its interest is great because "resolution one way or another is undoubtedly forthcoming," this court is not convinced. At the time this court granted Alves da Silva's petition, he had been detained for months under the automatic stay regulation and faced the potential of months more incarceration. Cf. Sampiao, 2025 WL 2607924, at *10 (discussing potential for prolonged detention under the regulations).

2025 WL 2675934, at *6 (D. Neb. Sept. 18, 2025); Vazquez v. Feeley, Civ. No. 25-cv-

01542-RFB, 2025 WL 2676082, at *21 (D. Nev. Sept. 17, 2025); Palma v. Trump,

Civ. No. 25-cv-3176-JFB, 2025 WL 2624385, at *4 (D. Neb. Sept. 11, 2025);

Sampiao, 2025 WL 2607924, at *12; Martinez v. Noem, Civ. No. 25-cv-01007-JKP,

2025 WL 2598379, at *4 (W.D. Tex. Sept. 8, 2025); Herrera v. Knight, --- F. Supp. 3d

----, 2025 WL 2581792, at *12 (D. Nev. Sept. 5, 2025); Leal-Hernandez, 2025 WL

2430025, at *13; Maldonado v. Olson, --- F. Supp. 3d ----, 2025 WL 2374411, at *14

(D. Minn. Aug. 15, 2025); Mohammed H. v. Trump, --- F. Supp. 3d ----, 2025 WL

1692739, at *5 (D. Minn. June 17, 2025); Gunaydin v. Trump, 784 F. Supp. 3d 1175,

1190 (D. Minn. 2025).

## CONCLUSION

For the foregoing reasons, Alves da Silva's amended petition for a writ of

habeas corpus (doc. no. 16) is granted, and the government's motion to dismiss (doc.

no. 17) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 29, 2025

cc:    Counsel of Record